<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD M. ZELMA,<br><br>    Plaintiff,<br><br>    v.<br><br>WONDER GROUP INC., a/k/a;<br>f/k/a REMARKABLE FOODS, INC.,<br>a/d/b/a, FOOD TRUCK INC. *et al.*,<br><br>    Defendants. | No. 25cv3232 (EP) (CF)<br><br>OPINION |

**PADIN**, **District Judge.**

    Plaintiff Richard M. Zelma brought this action in the Bergen County Superior Court, Law Division, alleging federal and state law violations stemming from two text messages he received from Defendant Wonder Group, Inc. ("Defendant" or "Wonder"). D.E. 1, Ex. A ("Complaint" or "Compl."). The crux of Plaintiff's Complaint is that Defendants[1] violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by sending him two text messages that contained verification codes.

    Defendant now moves to dismiss the Complaint pursuant Federal Rule of Civil Procedure 12(b)(6). D.E. 8 ("Motion"). Plaintiff opposes the Motion. D.E. 9 ("Opposition" or "Opp'n").[2]

---

[1] In addition to Wonder, Plaintiff brings this action against Doe Telemarketers 1-10 and ABC Corporations 1-10. *See* Dkt. Because Wonder is the only named Defendant, the Court refers to Wonder as the singular Defendant in this action.

[2] When reviewing Plaintiff's Opposition, the Court identified several quotations and citations that appeared inaccurate. *See* D.E. 16 ("Previous Order"). For example, Plaintiff included fabricated quotations from real cases, and at other points, cited to cases that, to the best of the Court's knowledge, do not exist. *See id.*

Defendant replies. D.E. 10 ("Reply"). In addition, Defendant moves for sanctions on the basis that Plaintiff has manufactured this lawsuit and because his claims are frivolous. D.E. 11 ("Motion

---

Accordingly, Plaintiff was ordered to disclose whether he used any generative artificial intelligence while drafting his Opposition and explain the identified discrepancies. *Id.* In his response, Plaintiff stated that he saw a "wave of AI-based services" when conducting legal research for this matter, and even tested one of the platforms for "off topic input." D.E. 19-2 ("Plaintiff's Letter") at 1. However, this experience "reinforced [his] decision to rely on [his] personal TCPA archive and trust legal databases." *Id.*

Plaintiff explained the fabricated quotations in his Opposition by stating that he "inadvertently used quotation marks in places where [he] meant only to paraphrase a holding or summarize the spirit of a ruling," which he now "understand[s] . . . could misrepresent intent and mislead the Court." *Id.* at 2. According to Plaintiff, he had "always used quotes where a supporting statement is made," but he "now understand[s] the difference between citation and paraphrasing." *Id.* And while Plaintiff acknowledged that "some of the cases [he] originally cited can't be found or verified in official records," he chalked that up to either "misread[ing] the source or summariz[ing] it poorly." *Id.*

Plaintiff's explanation strains credulity. Plaintiff has, in this district alone, brought nearly two dozen cases. Thus, despite his *pro se* status, he is not an inexperienced litigant. Plaintiff's submissions in this case alone demonstrate a familiarity with caselaw and pleading requirements. He even has a database of TCPA cases. If Plaintiff has enough repeat litigation to maintain a compendium of relevant cases, and has even learned how to properly Bluebook his citations, surely he knows how to use quotation marks.

"While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds *pro se*." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016) (quoting *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010)). For that reason, the Court will not consider Plaintiff's refiled Opposition brief, D.E. 19, which removes the problematic citations. Moreover, the Court strongly disagrees with Plaintiff's characterization of these inaccuracies as "formatting errors." Plaintiff's Letter at 1.

Plaintiff's above explanation does not fully account for the fabricated quotations and citations within his brief. It also calls into serious doubt the certification attached to his Opposition, in which Plaintiff declared under the penalty of perjury that he reviewed all relevant law, rules and regulations relevant to this matter. D.E. 9-1. The Court will defer its decision on whether to impose any sanctions against Plaintiff until the conclusion of this litigation.

for Sanctions" or "Sanctions Mot."). That motion is fully briefed.[3] The Court decides both motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** Defendant's Motion, and **DENY** Defendant's Motion for Sanctions *without prejudice*.

I.  BACKGROUND[4]

On November 13, 2024, Plaintiff received two text messages from Defendant: "Your Wonder verification code is 041797" and "Your Wonder verification code is 475599." *Id.* ¶ 36 (herein, the "Verification Texts"). According to the time stamps in the image embedded within the Complaint, the Verification Texts were sent within one minute of each other, and no further or prior texts were sent to Plaintiff. *Id.* Plaintiff's cell phone number has been on no-call registries (at both the federal and state level) since 2003. *Id.* ¶ 28.

Plaintiff's theory is that Wonder sends fake verification texts as a "trojan horse" to induce recipients into investigating where the messages came from, which will eventually lead the recipient to Wonder's website, where they will see solicitations and advertisements for Wonder's products. *See id.* ¶¶ 46-47. In other words, Plaintiff claims that the Verification Texts "were deliberately designed to create the false impression that Plaintiff [] requested access codes, compelling [him] to investigate the source." *Id.*

Before receiving the Verification Texts, Plaintiff had no prior knowledge of Wonder or its website, had not inquired about their products or services, and had not requested any

---

[3] Plaintiff opposes the Motion for Sanctions, D.E. 12 ("Sanctions Opposition" or "Sanctions Opp'n"), and Defendant replies, D.E. 13 ("Sanctions Reply").

[4] The facts in this section derive from the Complaint's well-pled factual allegations and the attachments thereto, which the Court presumes to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

communication from Wonder. *Id.* ¶¶ 32-34. Plaintiff "unequivocally denies providing Defendants with consent" to send messages to his cell phone number for solicitation purposes. *Id.* ¶ 54.

Plaintiff has suffered various harms from receiving the Verification Texts, including having to take time to research where they came from, use data and time on his phone plan, and lose battery on his phone. *Id.* ¶ 80. Plaintiff alleges violations of: (1) 47 U.S.C. §§ 227 (c)(3)(F) & (c)(5)(B) (Count I); (2) 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii) (Count II); (3) 47 U.S.C. § 227(b)(1)(B) (Count III); (4) N.J. Stat. Ann. § 2A:65D-3 and the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8 *et seq.*, (Count IV); (5) 47 U.S.C. § 227 (b)(2)(D) (Count V); (6) punitive damages (Count VI); and fraudulent inducement.[5]

## II.     LEGAL STANDARD

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation modified). The defendant bears the burden of showing that a plaintiff has failed to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be

---

[5] Although Plaintiff does not formally bring a claim for fraudulent inducement, he makes reference to Defendants fraudulently inducing him in his Complaint. Compl. ¶¶ 45-53. Given Plaintiff's *pro se* status, the Court construes his complaint liberally and will identify a cause of action even if a plaintiff does not formally assert it. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In other words, when determining whether to dismiss a complaint, the Court does not need to accept as true allegations in a complaint that are directly contradicted by authenticated documents that the complaint relies on. *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F. 2d 1192, 1197 (3rd Cir. 1993)).

### III.    ANALYSIS

Congress created the TCPA in response to the growing number of telemarketing calls and faxes that tied up emergency cell phone lines. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 15391, 15391-92 (2012). The TCPA applies to both voice calls and text messages. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (citation modified). The TCPA makes it illegal to, among other things, initiate a telephone call or text message to any phone number using an artificial or prerecorded voice to deliver a message without prior express consent (barring very limited exceptions not relevant here). 47 U.S.C. § 227(b)(1)(B). Congress provided the public with the right to sue if they received more than one telephone call or text within any 12-month period by or on behalf of the same entity in violation of the TCPA. 47 U.S.C. § 227(c)(5). As explained in more depth below, the Court will **GRANT in part** and **DENY in part** Defendant's Motion.

#### A.    Whether Plaintiff Consented to Receiving the Verification Texts

Before analyzing whether Plaintiff states a claim with respect to specific counts of the Complaint, the Court first addresses an argument common to many sections of Defendant's

5

moving papers: that Plaintiff's claims should be dismissed because he consented to receiving the Verification Texts. *See, e.g.*, Mot. at 1. According to Defendant, Wonder only sends verification texts like the two Plaintiff received when an individual registers for an account on their website, and therefore, the Verification Texts were sent with his consent. *Id.*; *see also id.* at 8-9. Defendant goes so far as to assert Plaintiff has manufactured this lawsuit. *See id.* at 1.

Although Defendant *may* be correct that the Verification Texts were sent in response to Plaintiff registering his phone number on its website, its fact-based argument is not appropriate for the Court to consider at the motion to dismiss stage. As Judge McNulty explained in another TCPA case, granting a motion to dismiss on the basis that a plaintiff consented to defendant's outreach when it was not clear from the face of the Complaint that was the case "would misapply the role of consent in Rule 12(b)(6) review of these TCPA claims." *Smith v. Pro Custom Solar LLC*, No. 19-20673, 2021 WL 141336, at *4 (D.N.J. Jan. 15, 2021).

In *Smith*, Judge McNulty noted that while the Third Circuit has not explicitly addressed whether consent in TCPA cases is an affirmative defense, it has, in dicta, "signaled its agreement with its sister circuits," which have consistently held that "consent (or its absence) is not an element but an affirmative defense," and therefore, "it is not the plaintiff's burden to pre-rebut it in order to avoid dismissal." *Id.* (citations to cases from other circuits omitted); *see also id.* (citing *Evankavitch v. Green Tree Serv., LLC*, 793 F.3d 355, 366 (3d Cir. 2015) which held that the burden to prove an exception to liability under another statute lies with the defendant and relying on interpretations of the TCPA holding that consent is an exception to liability for which the defendant bears the burden of proof). Judge McNulty also mentioned that his position that consent was an affirmative defense aligned with the Federal Communications Commission's ("FCC") view, which stated that "the creditor should be responsible for demonstrating that the consumer provided

prior express consent" and "should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent." *Id.* (quoting *Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (2008)).

Accordingly, the Court finds it is Defendant's burden—not Plaintiff's—to show that Plaintiff consented to receiving the Verification Texts. Defendant will have its opportunity to do so upon the completion of discovery.[6] Because the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiff, *N.J. Carpenters & the Trustees Thereof v. Tishman Construction Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014), the Court cannot rely on Defendant's representations that Plaintiff consented to receiving the Verification Texts or that he registered for an account on Wonder's website.[7] *See also Zelma v. Penn LLC*, No. 19-8725, 2020 WL 278763, at *8 (D.N.J. Jan. 17, 2020) (explaining that defendants' invocation of an affirmative defense included within the TCPA cannot be considered at the motion to dismiss stage).

---

[6] While Defendant is correct it need not provide that proof prior to discovery, Plaintiff is also correct in noting that Plaintiff's allegations are assumed to be true at this stage of the litigation. Absent any explicit proof to the contrary in the Complaint or any attachments, the Court will assume Plaintiff's allegations are true.

[7] According to the Exhibit A attached to the Complaint—a letter that Defendant's in-house counsel sent Plaintiff on January 16, 2025—Defendant has refused to provide proof that Plaintiff registered for an account on Wonder's website. D.E. 1, Ex. A ("Mauke Letter"). That the Mauke Letter suggests that Plaintiff registered for an account on Wonder's website does not make it so.

A court may rely on an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss *if the plaintiff's claims are based on the document*." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Plaintiff does not rely on the contention embedded within the letter that he registered for an account with Wonder; therefore, the Court cannot assume that the Verification Texts were sent in response to his registration. In fact, Plaintiff's rejection of that contention goes to the core of his Complaint. The Court similarly rejects Defendant's assertion that Plaintiff agreed to Wonder's terms and conditions on November 13, 2024, as it provides no proof that is true.

**B.     Count I:  Violations of §§ 277 (c)(3)(F) and (c)(5)(B) of the TCPA**

In Count I, Plaintiff alleges Defendants violated 47 U.S.C. §§ 277 (c)(3)(F) and (c)(5)(B).

Section 227(c)(3)(F) states that if the Federal Trade Commission decides to establish a [Do Not Call] database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F). In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

*Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915, 2023 WL 3294845, at *2 (E.D. Pa. May 5, 2023).

47 U.S.C. § 227(c)(5) "provides a private right of action for violations of the [FCC's] regulations accompanying the TCPA."  *Penn LLC*, 2020 WL 278763, at *6. "Pursuant to the TCPA, a claimant is entitled to 'received $500 in damages for each . . . violation.'" *Marks*, 2024 WL 1051974, at *5 (quoting 47 U.S.C. § 227(c)(5)(B)).

The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person."  47 U.S.C. § 227(a)(4).  The TCPA defines an "unsolicited advertisement" as any "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission."  47 U.S.C. § 227(a)(5).

Defendant asserts that Count I should be dismissed because the Verification Texts are not advertisements or solicitations as defined under the TCPA. Mot. at 6-7.  The Court agrees.  When rejecting a similar claim brought by a plaintiff who received (via fax) a satisfaction survey—which the plaintiff alleged was an unsolicited advertisement under the TCPA because it contained the

8

defendant's name, promoted the quality of its services, and referred its recipient to a website to which he could send his responses to the questions in the survey—the Third Circuit explained:

> "'Advertising' is the action of drawing the public's attention to something to promote its sale." *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (internal quotations and citations omitted). "So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015).
>
> Though an advertisement need not be as explicit as "buy this product from us," at **a minimum for the sending of the fax to violate the TCPA it must directly or indirectly inform the recipient that the sender or some other entity sells something of value.** *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) ("Because the messages did not mention property, goods, or services, we agree that they were not advertisements prohibited by the TCPA or its implementing regulations."). Moreover, the fax either must (1) notify a potential buyer that he or she can purchase a product, goods, or services from the sending entity or perhaps another seller, *see Sandusky*, 788 F.3d at 222 (finding that faxes were not advertisements, even though they call attention to items and services, because "no record evidence shows that they do so because the drugs or [ ] services are for sale [ ], now or in the future"), or (2) induce or direct a willing buyer to seek further information through a phone number, an email address, a website, or equivalent method for the purposes of making a purchase, *see Holtzman v. Turza*, 728 F.3d 682, 685-87 (7th Cir. 2013); *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Thus, the fax must convey the impression to its recipient that a seller is trying to make a sale to him. We believe it is important to limit the TCPA to promotion of the sale of goods or services lest any unsolicited fax that a commercial entity sends that contains a phone number or website address conceivably could become an "unsolicited advertisement," a result that would be inconsistent with the statutory definition of that term.

*Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 248-49 (3d Cir. 2019) (emphasis added). Like in *Mauthe*, nothing in the Verification Texts promotes goods or services to be bought or sold, nor does anything in the Verification Texts directly or indirectly inform Plaintiff that Wonder sold anything of value. Compl. ¶ 36.

Plaintiff argues that even if the messages were just verification texts, "they would still require prior express consent under the TCPA" because "[c]ourts have ruled that the mere classification of a message as 'verification' does not exempt it from TCPA liability if the recipient

9

did not consent to receive it." Opp'n at 14 (quoting, in a parenthetical citation, *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) as stating that "Verification messages fall under TCPA regulations when sent without prior express consent"). The problem for Plaintiff is that this quotation does not exist, *see* Prior Order at 2, and the Court could not identify any other caselaw to support that contention.

The Court is also not convinced by Plaintiff's assertion that the Verification Texts were a "trojan horse" to make him visit Wonder's website because they reference their brand in the text. Opp'n at 19. In *Mauthe*, the Third Circuit rejected the "trojan horse" argument as it would mean that "*any* [message] sent by defendant, for *any* purpose" could be considered an advertisement or solicitation as long as it contained information about the defendant's website. *Mauthe*, 767 F. App'x at 250. But here, the Verification Texts did not even contain a link to Wonder's website, and a "recipient's outside knowledge that a sender sells something does not transform every [message] sent by such sender to a recipient with such knowledge into an advertisement." *Id.* at 249. Nor does the fact that Plaintiff called the number that appeared to send the Verification Texts—which allegedly, in a "barely intelligible prerecorded announcement," acknowledged his interest in Wonder's products—change the Court's calculus. Compl. ¶ 39. The Third Circuit made clear that it would "not adopt a standard under the TCPA which effectively would construe the inclusion of a website address in a fax as *de facto* advertising." 767 F. App'x at 250. Applied here, the Court rejects Plaintiff's contention that any message sent with a return number could be seen as pretext for additional advertising. Accordingly, the Court concludes that the Verification Texts were not advertisements or solicitations under the TCPA, and therefore, will **DISMISS** Count I of the Complaint.

B.     **Count V:  Violations of 47 U.S.C. § 227(b)(2)(D)**

As noted above, it is a violation of the TCPA to send an unsolicited advertisement "unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)." 47 U.S.C. § 227(b)(1)(C)(iii). "Section 227(b)(2)(D) in turn sets forth the requirements for an acceptable opt-out notice. That section dictates the placement of the notice, sets forth several statements the notice must include, and requires that the notice also comply with the requirements of subparagraph 227(b)(2)(E) and subsection 227(d)." *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 285 (S.D.N.Y. 2013) (citing 47 U.S.C. § 227(b)(2)(D)).

Plaintiff alleges Defendant violated § 227(b)(2)(D) by not including an opt-out provision in the Verification Texts. But the Court concluded that the Verification Texts were not advertisements, and in turn, Plaintiff's § 227(b)(2)(D) claim fails.[8] Accordingly, the Court will **DISMISS** Count V of the Complaint.

C.     **Counts II and III:  Violations of 47 U.S.C. § 227(b)(1)(A)**

Defendant also argues that Counts II and III of the Complaint should be dismissed because the Verification Texts were not sent using an automatic telephone dialing system ("ATDS"). Mot. at 10-12. Under § 227(b)(1)(A) TCPA,[9] it is unlawful to make certain calls using an ATDS to a telephone number without the prior express consent of the called party. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 (2021); 47 U.S.C. § 227(b)(1)(A)). To state a claim under 47 U.S.C. § 227(b)(1)(A), a plaintiff must allege that: "(1) the defendant called a cellular telephone number;[10]

---

[8] Because the Court concludes that the Verification Texts are not advertisements, the Court does not reach Defendant's argument that § 227(b)(2)(D) does not create a private right of action. *See* Mot. at 17-18.

[9] Both Counts II and III of the Complaint allege violations of § 227(b)(1)(A) of the TCPA. *See* Compl.

[10] This element is not in dispute. *See* Opp'n.

(2) using an [ATDS]; (3) without the recipient's prior express consent." *Martinez v. TD Bank USA*, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. June 30, 2017) (citations omitted).

Given the Court's finding above that Plaintiff has sufficiently alleged he did not provide consent to receive the Verification Texts, only the second element is at issue. To establish the second element, "a plaintiff must plead facts that support a finding that the defendant used an ATDS in such a manner that violates the TCPA." *Deleo v. Nat'l Republican Senatorial Comm.*, No. 21-3807, 2021 WL 5083831, at *6 (D.N.J. Nov. 1, 2021). "To qualify as an [ATDS], a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook*, 592 U.S. at 399. The equipment in question *must* use a random or sequential number generator. *Id.* at 404.

A bare allegation that a defendant used an ATDS is insufficient to state a TCPA claim. *See, e.g.*, *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014). And while a plaintiff can make these allegations upon information or belief, courts typically "require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." *Id.* (quoting *Norman v. Sito Mobile Sols.*, No. 17-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017)); *see In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (finding the complaint sufficient when plaintiffs stated that they "received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers"). As this Court clarified in another TCPA case:

> The complaint must allege some facts permitting an inference that an ATDS was used. *Montinola v. Synchrony Bank*, No. 17-8963, 2018 WL 4110940, at *2 (D.N.J. Aug. 28, 2018) (applying Third Circuit definition); *Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 459-60 (N.D. Cal. 2020) (applying Ninth Circuit definition). That inference can come from allegations like (1) a delay before hearing the message, *Hazan v. Wells Fargo & Co.*, No. 18-10228, 2019 WL 1923272, at *3 (D.N.J. Apr. 30, 2019); (2) calls ending with a beep, *id.* at *2, (3) instructions to call a 1-800 number, *Todd v. Citibank*, No. 16-5204, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017); (4) an unusual phone number or short code instead, *Douek v. Bank of Am. Corp.*, No. 17-2313, 2017 WL 3835700, at *2 (D.N.J. Sept. 1, 2017); and (5) a robotic voice on the other end, *Montinola*, 2018 WL 4110940, at *3. . . . Although these facts are not independent legal requirements, they may help the pleader cross the plausibility line. [*Id.*]

*Smith*, 2021 WL 141336, at *2.

Plaintiff alleges that Defendant initiated the Verification Texts using an ATDS. Compl. ¶ 120 (citing to a 2012 FCC Report including a definition of an ATDS). In support of his claim, Plaintiff alleges that when he called the number that sent the Verification Texts, he "encountered a barely intelligible prerecorded announcement delivered in a heavily accented female voice" and that this "recording acknowledged the caller's interest in the Defendant's products." *Id.* ¶ 39. The "recorded message terminated without providing Plaintiff the option to stop the communications or transfer to a live agent." *Id.* ¶ 40. Furthermore, Plaintiff clearly alleges that: (1) Defendants did not have his prior express consent to initiate these messages using an auto-dialer, *id.* ¶ 121; (2) he had no prior knowledge of Wonder or their website before receiving the Verification Texts, *id.* ¶ 32; (3) he never inquired about Wonder's products or services, *id.* ¶ 33; and (4) he never requested any communication from Wonder, *id.* ¶ 34.

The line between sufficient and insufficient allegations in this context is thin. In *Norman*, the plaintiff's failure to plead that text messages were sent from an ATDS or were random in nature, combined with the fact the plaintiff did not, "for example, aver that he did not have a business relationship with defendant," led the court to dismiss the complaint. 2017 WL 1330199,

13

at *3. By contrast, in *Kramer v. Autobytel, Inc.*, the court found that the plaintiff's allegations, when considered in their entirety, were sufficient because the plaintiff pled that each "text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." 759 F. Supp. 2d 1165, 1167 (N.D. Cal. 2010). While Plaintiff certainly could have alleged more regarding Defendant's use of an ATDS—especially whether Defendant utilized a device that has the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator—the Court concludes he has alleged enough to survive a motion to dismiss. Accordingly, the Court will **DENY** Defendant's Motion as to Counts II and III.

### D.     Count IV:  Violation of N.J. Stat. Ann. § 2A:65D-3 and the NJCFA

In Count IV, Plaintiff alleges that Defendant violated the NJCFA and N.J. Stat. Ann. § 2A:65D-3 by sending Plaintiff the Verification Texts.

Under the NJCFA, it is unlawful to use any "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]" N.J. Stat. Ann. § 56:8-2. To establish a *prima facie* claim under the NJCFA, a plaintiff must demonstrate:  "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Valli v. Avis Budget Grp., Inc.*, No. 14-6072, 2017 WL 1956777, at *4 (D.N.J. May 10, 2017) (citing *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007)).

The NJCFA provides a remedy for unlawful telemarketing *phone calls*. *Gutman v. Liberty Bankers Life Ins. Co.*, No. 24-8076, 2025 WL 615128, at *5 (D.N.J. Feb. 26, 2025) (citing N.J. Stat. Ann. § 56:8–119-130). "It appears, however, that Plaintiff's claim cannot be brought under New Jersey's 'Do Not Call Law,' N.J. Stat. Ann. §§ 56:8–119-130, because Plaintiff was not solicited via a 'telephone call,' but rather through text message." *Penn LLC*, 2020 WL 278763, at *8. In *Penn LLC*, the Court found that the "Do Not Call Law" only covers phone calls—a holding it confirmed by reading definitions in that statute. *Id.* For example, the Do Not Call Law defines "telemarketing" as "any plan, program or campaign . . . to encourage the purchase or rental of . . . merchandise, *but does not include the solicitation of sales through media other than a telephone call.*" *Id.* (quoting N.J. Stat. Ann. § 56:8-120) (emphasis partially added). Similarly, the statute defines a "telemarketing sales call" in a manner that makes clear the cause of action is limited to phone calls. *See* N.J. Stat. Ann. § 56:8-120 (defining a "telemarketing sales call" as "a *telephone call* made by a telemarketer. . . .").

As he did in *Penn LLC*, Plaintiff attempts to get around this limitation by invoking N.J. Stat. Ann.§ 2A:65D-3. Part of the Unsolicited Communications Act, N.J. Stat. Ann. §§ 2A:65D1–D7, § 2A:65D-3 states that it is unlawful to "send an unsolicited advertisement by means of text messaging without first receiving permission from the intended recipient." But as the Court noted in *Penn LLC*, § 2A:65D-5 of the Act "explicitly states that '[n]othing set forth in this act shall be construed as creating, establishing or authorizing a private cause of action by an aggrieved person against a person who has violated, or is alleged to have violated, the provisions of this act.'" 2020 WL 278763, at *9 (D.N.J. Jan. 17, 2020) (quoting N.J. Stat. Ann. § 2A:65D-5). Because the

statutes that Plaintiff relies on do not provide him with an avenue for relief, the Court will **DISMISS** Count IV.[11]

### E.   Fraudulent Inducement

A section of the Complaint is titled "The Defendants' Plot – Fraudulent Inducement," *see* Compl. ¶¶ 45-53, which the Court construes as the basis for a claim for fraudulent inducement. To state a claim for fraudulent inducement under New Jersey law, a plaintiff must allege: (1) a material representation of a present or past fact (2) that was made with knowledge of its falsity (3) with the intention that the other party rely thereon (4) resulting in reliance by that party (5) to his detriment. *Metex Mfg. Corp. v. Manson*, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. March 28, 2008) (citing *Jewish Ctr. of Sussex Cnty v. Whale*, 86 N.J. 619, 624 (1981)). Fraud in the inducement claims "must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard since they sound in fraud." *Importers Serv. Corp. v. Aliotta*, No. 22-640, 2024 WL 2765620, at *8 (D.N.J. May 30, 2024) (citing *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593-94 (D.N.J. 2014) (applying Rule 9(b) to fraud in the inducement claim)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Plaintiff alleges that by sending him the Verification Texts—which were intentionally crafted to mislead him (and others) into believing the messages were solicited—Defendant fraudulently induced him into investigating the source of the messages. Compl. ¶¶ 45-47; *see also*

---

[11] The Court notes this is at least the second time Plaintiff has brought a claim under N.J. Stat. Ann. § 2A:65D-3 for an unsolicited advertisement. The statute clearly does not provide a private right of action, and the Court cautions Plaintiff that future attempts to bring a claim under this statute—barring a change in law—may result in sanctions.

16

Opp'n at 26-27. According to Plaintiff, "Defendants knowingly misrepresented facts to induce Plaintiff into engaging with their service." Compl. ¶ 46.

On these facts, Plaintiff has failed to state a fraudulent inducement claim. Most notably, Plaintiff has not identified a misrepresentation of a fact. That the Verification Texts were allegedly sent under the false pretense to induce Plaintiff into researching Wonder does not give rise to a claim for fraudulent inducement, in which a plaintiff must show a false statement of fact. *See Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013); *see also* Reply at 13 (arguing that "the content of the Verification Text Messages solely contain a security code," which are not "facts" or "statements" that could have induced Plaintiff to take further action). Similarly, Plaintiff has failed to plead with particularity that Wonder deliberately sent Plaintiff the Verification Texts with the intention that he rely on them. *See* Compl. Because the Court agrees with Defendant that "Plaintiff does not assert facts in the Complaint sufficient to suggest a material misrepresentation by Defendant, or any reliance by Plaintiff on a misrepresentation," Reply at 15, the Court will **DISMISS** Plaintiff's fraudulent inducement claim.

### F.     Count VI:  Punitive Damages

Plaintiff also brings a standalone count for punitive damages. Compl. ¶¶ 146-152. Defendant argues that there is no independent count for punitive damages under New Jersey law and therefore Count VI of the Complaint should be dismissed. Mot. at 21-22 (citing *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 346 (3d Cir. 1994)).

Defendant is correct. "The Court must dismiss Plaintiff's separate count for punitive damages [] because an independent count for punitive damages is not cognizable." *Smith v. Covidien LP*, No. 19-11981, 2019 WL 7374793, at *10 (D.N.J. Dec. 31, 2019) (citing *DiAntonio v. Vanguard Funding, LLC*, 111 F. Supp. 3d 579, 585 (D.N.J. 2015)). Caselaw in this circuit is clear that punitive damages are "not a substantive cause of action in and of themselves." *Hassoun*

17

*v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). In other words, while Plaintiff may seek punitive damages relative to his other claims (to the extent they are available for those claims), he may not do so as an independent cause of action. *Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 654 (D.N.J. 2022). Accordingly, the Court will **DISMISS *with prejudice*** Count VI of the Complaint.

### G. Motion for Sanctions

Finally, Defendant moves for sanctions against Plaintiff for "refusing to withdraw his frivolous Complaint." Sanctions Reply at 1; *see also* D.E. 11-2 ("Rule 11 Letter to Plaintiff"). The Court notes that Plaintiff and Defense Counsel have rehashed many of the arguments raised in the Sanctions Motion before, including in *Penn LLC*. *See* 2020 WL 278763, at *9 (D.N.J. Jan. 17, 2020). For that reason, the Court cuts to the chase.

Like in *Penn LLC*, here, Defendant's position that Plaintiff's arguments are frivolous is severely undercut by the fact that Counts II and III survive the Motion. Nevertheless, the Court is mindful that Plaintiff makes arguments in Opposition to the Motion that this Court has rejected before—for example, that N.J. Stat. Ann. § 2A:65D-3 has no private right of action.

However, in the Court's view, the heart of Defendant's Motion for Sanctions is that Plaintiff has manufactured this lawsuit by registering for an account with Wonder and then proceeding to allege the opposite. At this time, the Court cannot ascertain the basis of Defendant's claim. Not only has there been no discovery, but Defendants have not provided any proof to support that contention beyond their conclusory assertions that Wonder only sends verification text messages when a person registers for an account on their website and that Plaintiff agreed to Wonder's terms and conditions in November 2024. *See Penn LLC*, 2020 WL 278763, at *9 (rejecting defendants' sanctions motions where defendants provided no evidence to support their claim that Plaintiff acted in bad faith).

18

Because the Court resolves all doubts in favor of the non-moving party on a motion for sanctions, *id.*, the Court will **DENY** Defendant's Motion for Sanctions ***without prejudice***.  See also *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) ("Generally, sanctions are prescribed only in the 'exceptional circumstance where a claim or motion is patently unmeritorious or frivolous.'") (citation modified).  Should discovery establish that Plaintiff registered for an account with Wonder (and therefore consented to receiving the Verification Texts), or if, for instance, Defendant can show that *Plaintiff* signed Wonder's terms and conditions in November 2024, *see* Mauke Letter at 4, Defendant may renew its motion.

IV.   **CONCLUSION**

For the reasons explained above, the Court will **GRANT in part** and **DENY in part** Defendant's Motion, and **DENY *without prejudice*** Defendant's Motion for Sanctions.  An appropriate Order accompanies this Opinion.

Dated:  October 22, 2025

_____
Evelyn Padin, U.S.D.J.
