**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Richard M. Zelma, *pro se*
940 Blanch Avenue
Norwood, New Jersey 07648
Tel: 201 767 8153
Electronic Mail: TCPALAWRZ@GMAIL.COM

| | |
|---|---|
| **RICHARD M. ZELMA**<br><br>**PLAINTIFF**<br><br>**VS.**<br><br>**WONDER GROUP INC., a/k/a; f/k/a REMARKABLE FOODS, INC., a/d/b/a, FOOD TRUCK INC.; BLUE APRON; ("DEFENDANT-WONDER GROUP)**<br><br>**DEFENDANTS'** | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**Case 2:25-cv-03232-EP-CF**<br><br>**PLAINTIFFS 2nd AMENDED COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES for VIOLATIONS under 47 U.S.C.§227:**<br><br>**SENDING UNSOLICITED TEXT MESSAGES TO A CELLULAR PHONE LISTED ON THE NO-CALL REGISTRY; 47 USC §227 (C)(3)(F);**<br><br>**USING AN AUTO-DIALER TO SEND MESSAGES BY TEXT; 47 USC §227 (b)(1)(A) & 47 CFR 64.1200(a)(1)(iii);**<br><br>**FAILURE TO PROVIDE AN OPT-OUT MECHANISM FOR TEXTS; 47 USC §227 (b)(2)(D);**<br><br>**SENDING TEXT MESSAGES WITHOUT THE PRIOR EXPRESS CONSENT OF THE CALLED PARTY 47 CFR 64.1200 (a)(1)(III) & (A)(9)(i)(g);**<br><br>**AND FOR**<br><br>**TREBLED DAMAGES and PERMANENT INJUNCTIVE RELIEF.** |

## I.    <u>INTRODUCTION</u>

Plaintiff, Richard M. Zelma by way of this 2nd Amended Complaint ("SAC") against Defendant Wonder Group ("Wonder") says as follows:

1.    This action arises under the Telephone Consumer

**1**

Protection Act ("TCPA"), 47 U.S.C. § 227, for unsolicited text messages sent to Plaintiff's cellular telephone.

2.     Plaintiff alleges Defendant sent text messages to his cellular phone, which remains listed with the federal no-call registry since 2003, without prior express consent and without providing a clear opt-out mechanism.

**3.**     This Second Amended Complaint is filed pursuant to the Court's October 22, 2025 Opinion and Order (D.E. 22), which dismissed Counts I, IV, and V without prejudice, dismissed Count VI with prejudice, and allowed Counts II and III to proceed.

## II. <u>PARTIES</u>
### <u>PLAINTIFF</u>

**4.**     Richard M. Zelma (hereinafter **"Plaintiff"** or "Zelma"), is a natural person as defined under 47 USC §153(39) and senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648 and the user and subscriber to the subject cellular phone number.

### <u>DEFENDANTS</u>

5.     Upon information and belief, Defendant Wonder Group Inc. Hereinafter ("Wonder; Wonder Group Inc.") or ("Defendant") is a Delaware corporation having its principal place of business

**2**

located at 183-205 Avenue L, Newark, N.J. 07105. Wonder operates in the food service industry.

**6.** The Wonder defendants agent for service is Incorporating Services, LTD, 349 Kinderkamack Road, Westwood, NJ,07675.

### III. <u>JURISDICTION AND VENUE</u>

7. The events giving rise to this Complaint occurred in Bergen County, New Jersey.

8. Defendant is registered to do business and maintains a principal place of business in New Jersey.

9. Plaintiff alleges statutory injuries recognized under the TCPA, including invasion of privacy, nuisance, and consumption of cellular resources, caused by Defendants' willful or knowing violations.

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227, because this action arises under the TCPA.

11. As further detailed below, Defendants directed solicitation activities into New Jersey, including the text messages at issue.

### IV. <u>ACTS OF AGENTS</u>

**3**

Zelma v. Wonder Group;  2:25-cv-03232

12.     Whenever and wherever it is herein alleged that the Defendant[s], either individually, in concert with others or as a group, did any act defined, described or set forth below, it is meant the Defendant[s] performed, caused to be performed and/or participated in the act[s] and/or, that Defendants officers, owner[s], member[s] and/or managing members, partner[s], employees, contractors, successors, assigns, predecessors, affiliates, or 'other' agent[s], performed or participated in those acts on behalf of, for the benefit of, and/or under the authority or direction of the Defendant[s] and each of them under Agency.

## V.    <u>FACTUAL BACKGROUND</u>

13.     Plaintiff subscribes to cellular phone number [551] XXX-0393. This phone number has been and remains listed on the FTC no-call registry since its inception in 2003.

14.     Plaintiff primarily uses his cell phone for emergencies or family communication when away from home.

15.     On or about November 13, 2024, Defendants initiated two (2) text messages to Plaintiff's cellular phone.

16.     Due to the nature of the messages and Plaintiff's limited use of his cellular phone, the texts initiated by

4

Defendants on November 13, 2024, were not discovered by Plaintiff until December 20, 2024.

17.    Plaintiff had no prior knowledge of the Defendants or their website before receiving the prohibited text messages.

18.    Plaintiff never inquired about Defendants' products or services.

19.    Plaintiff never signed up for anything with the defendants.

20.    Plaintiff never requested any communication from the Defendants.

21.    Plaintiff initially identified the six-digit codes provided in each text message as short codes (SMS), commonly associated with marketing communications.

22.    Plaintiff's screen capture of both texts:



**5**

23.    The text messages noticeably lacked a provision to reply "STOP" or any other opt-out mechanism, as shown in the screen capture.

24.    The following are results of Plaintiff's subpoena to his cell carrier, evidencing the receipt of the unsolicited text messages:

### Subpoena Results TracFone

| SOURCE | ESN | MDN | Dialed Number | Call Date & Time | Call Direction |
|--------|-----|-----|---------------|------------------|----------------|
| Monthly Data | 358500073742XXX | 551XXX0393 | n/a | 11/13/24 13:05 | Outgoing |
| Monthly Data | 358500073742XXX | 551XXX0393 | n/a | 11/13/24 13:06 | Outgoing |
| Monthly Data | 358500073742XXX | 551XXX0393 | 9086508550 | 11/13/24 13:38 | Incoming |
| Monthly Data | 358500073742XXX | 551XXX0393 | 9086508550 | 11/13/24 13:39 | Incoming |

25.    Upon placing a call to the number provided at the top of the text message, [908] XXX-8550, Plaintiff encountered a prerecorded announcement that was difficult to understand. The recording acknowledged the caller's interest in the Defendants' products.

26.    The prerecorded message terminated without providing Plaintiff the option to stop the communications or transfer to a live agent.

27.    The exact number of texts initiated by Defendants and the factual basis for any claims of authorization or consent will be determined through Discovery.

28.    Upon identifying the Defendants, Plaintiff notified their legal department about the subject texts.

**6**

29.     Subsequently, in-house counsel William W. Mauke ("Mauke") responded, denying his client sent any texts to Plaintiff.

30.     Despite multiple follow-ups providing details such as Plaintiff's phone number and the specific six-digit numeric codes linked to the texts, Mauke continued to unequivocally deny his client's involvement in sending the messages.

31.     Through due diligence, Plaintiff discovered that the two prohibited text messages were invitation codes granting access to a website owned or controlled by the Defendants.

32.     After Plaintiff provided screen captures of the text messages to Attorney Mauke, requesting clarification, Mauke responded and refused to provide substantive evidence.

## VI. THE MANUFACTURED EVIDENCE

33.     Instead of providing clarifying information, Attorney Mauke introduced claims that were inconsistent with the facts and unsupported by evidence, as detailed in Plaintiff's Exhibit-1.

34.     Mauke's reply consisted of a pre-formatted set of assertions unsupported by evidence.

35.     For example, Mauke asserted that Plaintiff accessed Defendant's website on November 13, 2024. Plaintiff first noticed the text messages on December 20, 2024, making that assertion implausible.

7

36.    Mauke further asserted that Plaintiff agreed to arbitration by accepting "Wonder Terms and Conditions." Plaintiff denies ever visiting Defendant's website or entering into any agreement, and no supporting evidence has been produced.

37.    Plaintiff has never had any knowledge of Defendant or its website prior to this dispute.

38.    It was therefore impossible for Plaintiff to have signed up for any service or agreed to any terms and Plaintiff invites Defendant to produce evidence if such exists.

39.    Attorney Schwartz continued corresponding but did not substantiate Mauke's claims with evidence. Defendants have instead relied on unverified assertions without producing supporting documentation, and despite Plaintiff's repeated requests, no evidence has ever been provided.

40.    If such evidence did exist, it could have been produced to resolve the matter without further litigation. The absence of any supporting documentation and refusal to provide their "claimed proof" underscores that Defendants' claims lack any evidentiary foundation.

**8**

41.    Plaintiff therefore preserves the counts in his prior complaint, as the unsupported assertions appear to be an attempt to create the impression of consent where none existed. Accordingly, Plaintiff respectfully submits that his claims should proceed.

42.    The identical preformatted content, six-digit codes, and the one-minute spacing between messages support an inference that the texts were generated and sent using automated technology.

43.    Prohibited text messages are generally initiated for a purpose, to notify a consumer about the availability of products, goods, or services.

44.    The Defendant is in the food service industry providing a conglomerate of various products it markets.

45.    Plaintiff believes and thereby avers the Defendants text messages were not a mistaken act, were not requested, but functioned as advertisements intended to direct recipients to Defendant's website. The Defendants initiated those text messages to Plaintiff's cellular telephone, at least twice under the name 'Wonder', without consent.

46.    A second text was received within one minute from the first, where both such messages displayed

**9**

preformatted text, generated through auto-dialed technology. *Id.*

47.    The defendants text messages were displayed with two identical generic messages-"**Your Wonder verification code is**"; each containing a distinct 6 digit numeric code, the product of a computer responding to a request that does not require human engagement.

*48.*    The provided text messages, with exception to the numeric codes, appear identical as preformatted, generic, "robo-text" messages stored within a computer or dialing device.[1]

49.    *Assuming arguendo*, the foregoing recitation does not imply nor state in any way, that Plaintiff, prior to this litigation, ever visited or entered the defendant's website.

50.    Plaintiff did not fill out or agree to any form of membership or any conditions as claimed.

51.    Defendants' assertions remain unsupported by evidence.

**52.**    Thus, the defendant engaged in this proscription by texting messages to Plaintiff to his cellular telephone, [551] XXX- 0393, where that cellular number

---

[1]    See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7978, 8017, paras. 24, 111-15 (2015) (TCPA Omnibus Declaratory Ruling and Order), pets. for review pending sub nom. ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. filed July 10, 2015). Just as texts are a subset of "calls" under the TCPA, "robotexts" are a subset of "robocalls." See id. at 7964, para. 1 & n.1.

**10**

has remained listed with the federal no-call-list since 2003, to avoid receiving unwanted telemarketing or text message solicitations of any kind.

### VII.    THIS COURT'S POWER TO GRANT RELIEF

53.    47 U.S.C. §227(b)(3)(A) empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any future violation by the Defendants of any provision of law enforced by the FCC that protects Plaintiff.

54.    Plaintiff will continue to suffer nuisance, invasion of privacy and unwanted consumption of cellular resources if Defendants are permitted to continue their practices without injunctive relief.

**55.**    Accordingly, Plaintiff has a cause of action against the Defendants and each of them and hereby seeks relief under the TCPA's Strict Liability statutory damage award as well as Permanent Injunctive Relief pursuant to the foregoing, against the Defendants and each of them.

### VIII.  COUNT ONE
### INITIATING UNLAWFUL TEXTS TO A NUMBER ON THE NATIONAL DO-NOT-CALL REGISTRY
### VIOLATION OF 47 U.S.C. § 227(C)(3)(F) AND 47 C.F.R. § 64.1200(C)(2)

56.    Plaintiff repeats and incorporates by reference paragraphs one through fifty-five as if fully set forth herein.

**11**

Zelma v. Wonder Group;  2:25-cv-03232

57.     Plaintiff's cellular number, [551] XXX-0393, has been continuously listed on the National Do-Not-Call Registry since 2003.

58.     On November 13, 2024, Plaintiff received two text messages from or on behalf of Defendant.

59.     Each message contained a "Wonder verification code" and directed Plaintiff to engage with Defendant's website and services.

60.     These messages were "telephone solicitations" within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15), because they encouraged Plaintiff to purchase or use Defendant's goods or services.

61.     Defendant failed to subscribe to or access the National Do-Not-Call Registry as required and therefore lacked any immunity or safe harbor defense under 47 U.S.C. § 227(c)(5)(C).

62.     The Defendant had no effective internal do-not-call procedures in place, as evidenced by the repeated texts.

63.     Each text consumed Plaintiff's cellular plan minutes and resources, adding to the nuisance and invasion of privacy.

64.     Defendant initiated these solicitations despite Plaintiff's number being registered on the National Do-Not-Call Registry.

65.    Defendant also failed to maintain an internal do-not-call list or provide Plaintiff with a mechanism to prevent further solicitations.

66.    Each text message therefore violated 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

67.    Plaintiff is entitled to statutory damages of $500 per violation, trebled to $1,500 per violation for willful or knowing conduct, as well as injunctive relief to prevent further unlawful texts.

68.    Defendant initiated the texts knowingly and for its own financial gain, further supporting treble damages under the TCPA.

**WHEREFORE,** Plaintiff demands judgment against Defendant for statutory damages, trebled damages for willful or knowing violations, injunctive relief, and such other relief as the Court deems just and proper.

### IX.    COUNT TWO
### PROHIBITED USE OF AN AUTO-DIALER TO SEND TEXT MESSAGES
### VIOLATIONS OF 47 U.S.C. §§227(b)(1)(A)(iii) and 47 CFR 64.1200(a)(1)(iii)

69.    Plaintiff repeats, re-alleges and incorporates by reference, Paragraphs one through Sixty-Eight as if set forth in full at length.

70.    Plaintiff received the subject text messages on his cellular telephone;

**13**

71.     The texts messages, described herein, were received and are alleged to have been sent by Defendants.

72.     The defendants initiated those text messages using an automated telephone dialing system (ATDS) in violation of the proscriptions of the TCPA, as amended February 15, 2012, FCC REPORT & ORDER, NPRM, 25 FCC Rcd at 1508-1511, paras. 17-23.

73.     The Defendants did not have Plaintiffs prior express consent to initiate text messages to his cellular phone using an auto-dialer. *Id.*

74.     The defendants foregoing conduct by each of them initiating text messages, constitutes separate and distinct violations to the TCPA, 47 U.S.C.§227(b)(1)(A)(iii) and the Regulations promulgated thereunder, 47 C.F.R.§64.1200(a)(1), for each text received:

> (a)...
> (b) Restrictions on use of automated telephone equipment;
>   (1) PROHIBITIONS: It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>     (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States; . ."

75.     Defendant initiated the texts knowingly and for its own financial gain, further supporting treble damages under the TCPA.

**14**

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them as follows:

The Defendants engaged in willful or knowing violations of the TCPA under 47 U.S.C. § 227.

Plaintiff requests statutory damages of $500.00 for each of the two violations material to Count Two. Accordingly, due to the Defendants' willful or knowing violations, Plaintiff seeks damages trebled to $1,500.00 per violation, pursuant to 47 U.S.C. § 312(f)(2), as implemented thereunder. With two violations, the total damages sought amount to Three Thousand Dollars ($3,000.00).

## X.  COUNT THREE
### PROHIBITED USE OF AN AUTO-DIALER TO SEND A TEXT MESSAGE TO A CELL PHONE WITHOUT THE RECIPIENT'S PRIOR EXPRESS CONSENT. 47 U.S.C. § 227(b)(1)(B)

76.     Plaintiff repeats, re-alleges and incorporates by reference, Paragraphs one through Seventy-Five as if set forth in full at length.

77.     Plaintiff received the subject text messages on his cellular telephone.

78.     The texts messages, described herein, were received and identified as coming from the defendants.

79.     Plaintiff did not know the defendants, never heard of the defendants, therefore never provided the defendants any consent to receive the subject texts.

**15**

80.    A caller may not use an ATDS to place a call or send a text message to a cell phone without the recipient's prior express consent.47 U.S.C. § 227(b)(1)(B);

The TCPA states in relevant part:

(B) to initiate any telephone call or send any text message to any residential telephone line or cellular telephone line . . . to deliver a message without the prior express consent of the called party.

81.    Defendant initiated the texts knowingly and for its own financial gain, further supporting treble damages under the TCPA.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them as follows:

The Defendants engaged in willful or knowing violations of the TCPA under 47 U.S.C. § 227.

Plaintiff requests statutory damages of $500.00 for each of the two violations material to Count Three. Accordingly, due to the Defendants' willful or knowing violations, Plaintiff seeks damages trebled to $1,500.00 per violation, pursuant to 47 U.S.C. § 312(f)(2), as implemented thereunder. With two violations, the total damages sought amount to Three Thousand Dollars ($3,000.00)

## XI.  COUNT FOUR
### FAILURE TO PROVIDE OPT-OUT MECHANISMS FOR TEXTS; 47 USC §227 (b)(2)(D)

82.    Plaintiff repeats, re-alleges and incorporates by reference, Paragraphs one through Eighty-One as if set forth in full at length.

**16**

83.    Plaintiff received the subject text messages on his cellular telephone;

84.    The texts messages described herein, were received and identified as coming from the defendants. ***Id.***

85.    The Defendants initiated the unsolicited text messages to Plaintiff's cellular telephone without providing a clear and reasonable opt-out mechanism, in violation of 47 U.S.C. § 227(b)(2)(D).

86.    The Defendants failed to include any opt-out mechanism, such as the ability to reply with "STOP," which is a reasonable means of revocation as recognized by the FCC.

87.    Defendant's failure to provide a reasonable opt-out mechanism prevented Plaintiff from stopping further solicitations, compounding the harm and violating the FCC's implementing rules.

88.    Plaintiff has suffered statutory harms recognized under the TCPA, including nuisance, invasion of privacy, and consumption of plan minutes.

89.     Accordingly, Plaintiff is entitled to statutory and treble damages as provided by the TCPA.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them as follows:

The Defendants engaged in willful and knowing violations of the

**17**

TCPA under 47 U.S.C. § 227.

Plaintiff requests statutory damages of $500.00 for each of the two violations material to Count Four. Accordingly, due to the Defendants' willful or knowing violations, Plaintiff seeks damages trebled to $1,500.00 per violation, pursuant to 47 U.S.C. § 312(f)(2), as implemented thereunder. With two violations, the total damages sought amount to Three Thousand Dollars ($3,000.00)

## RESERVATION OF CLAIMS

Plaintiff preserves, without waiver, the claims the Court dismissed without prejudice in its October 22, 2025 Order. Plaintiff does not re-plead those claims here, but reserves the right to seek leave to amend if discovery produces facts that support them, including but not limited to fraudulent inducement or other violations arising from the same conduct.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court:

**(a)**    Award Plaintiff strict liability statutory damages of $500.00 for each of the two (2) text messages made in violation of the regulations to a phone registered on the Federal no-call registry, as proscribed under the TCPA, 47 USC §§227 (c)(3)(F) & (c)(5)(B) material to Count One, trebled as set forth herein for willful or knowing, for a total of $3000.00.

**18**

Zelma v. Wonder Group;  2:25-cv-03232

**(b)**    Award Plaintiff strict liability statutory damages of $500.00 for each of the two (2) text messages made using an autodialer in violation of the regulations proscribed under the TCPA, 47 U.S.C. §§227(b)(1)(A)(iii) and 47 CFR 64.1200(a)(1)(iii) material to Count Two, and trebled as set forth herein for willful or knowing, for a total of $3000.00.

**(c)**    Award Plaintiff strict liability statutory damages of $500.00 for each of the two (2) text messages sent without the recipient's prior express consent. made in violation of the regulations prescribed under the TCPA, 47 U.S.C. § 227(b)(1)(B), material to Count Three, and trebled as set forth herein for willful or knowing, for a total of $3000.00.

**(d)**    Award Plaintiff strict liability statutory damages of $500.00 for each of the two (2) text messages sent without providing a clear and reasonable opt-out mechanism, in violation of 47 U.S.C. § 227(b)(2)(D), material to Count Four, and trebled as set forth herein for willful or knowing, for a total of $3000.00.

**(e)**    Award Plaintiff Permanent Injunctive Relief pursuant to 47 U.S.C. §227(b)(3)(A)

**(f)**    Award Plaintiff any other relief The Court deems justified to stop the unlawful telemarketing described and defined herein.

<u>**SIGNATURE PAGE FOLLOWS**</u>

**19**

Zelma v. Wonder Group;  2:25-cv-03232

Respectfully submitted,

*/s/ **Richard M. Zelma***          **Dated:** October 31, 2025

Richard M. Zelma, *pro se*
Plaintiff

**20**

Zelma v. Wonder Group;  2:25-cv-03232