<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| RICHARD M. ZELMA,<br><br>      Plaintiff,<br><br>      v.<br><br>WONDER GROUP INC., a/k/a;<br>f/k/a REMARKABLE FOODS, INC.,<br>a/d/b/a, FOOD TRUCK INC. *et al.*,<br><br>      Defendants. | No. 25cv3232 (EP) (CF)<br><br>**OPINION** |

**PADIN**, **District Judge.**

*Pro se* Plaintiff Richard M. Zelma commenced this action in the Bergen County Superior Court, Law Division, alleging federal and state law violations stemming from two text messages he received from Defendant Wonder Group, Inc. ("Defendant" or "Wonder").  D.E. 1, Ex. A ("Complaint" or "Compl.").  Plaintiff alleges that Defendants[1] violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by sending him two text messages that contained verification codes.

This Court partially granted Defendant's motion to dismiss the Complaint and allowed Plaintiff leave to file an amended complaint on certain counts.  D.Es. 21 ("MTD Opinion" or "MTD Op.") & 22 ("MTD Order").  Plaintiff timely filed an amended complaint.  D.E. 27 ("Amended Complaint" or "Am. Compl.").  Defendant now moves to partially dismiss the Amended Complaint, asserting that Plaintiff has failed to cure the deficiencies outlined in the MTD

---

[1] In addition to Wonder, Plaintiff brings this action against Doe Telemarketers 1-10 and ABC Corporations 1-10.  *See* Compl.  Because Wonder is the only named Defendant, the Court refers to Wonder as the singular Defendant in this action.

Opinion. D.E. 31 ("Motion"). Plaintiff opposes the Motion. D.E. 32 ("Opposition" or "Opp'n").

Defendant replies. D.E. 38 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R.

78.1(b). For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

## I.    BACKGROUND[2]

### A.    Factual Background

On November 13, 2024, Plaintiff received two text messages from Defendant: "Your

Wonder verification code is 041797" and "Your Wonder verification code is 475599." *Id.* ¶¶ 15,

22 (herein, the "Verification Texts"). According to the time stamps in the image embedded within

the Complaint, the Verification Texts were sent within one minute of each other, and no other texts

were sent to Plaintiff. *Id.* ¶ 22. Plaintiff's cell phone number has been on no-call registries (at

both the federal and state level) since 2003. *Id.* ¶ 13.

According to Plaintiff, "[p]rohibited text messages are generally initiated for a purpose, to

notify a consumer about the availability of products, goods, or services." *Id.* ¶ 43. It follows that

Defendant—which is in the food services industry—did not mistakenly send the texts to Plaintiff,

but instead, sent the Verification Texts to serve as the functional equivalent of an advertisement

intended to direct recipients to Wonder's website. *Id.* ¶¶ 44-45; *see id.* ¶ 59 (alleging that each

message "contained a 'Wonder Verification Code' and directed Plaintiff to engage with

Defendant's website and services").

---

[2] The facts in this section derive from the Amended Complaint's well-pled factual allegations and
the attachments thereto, which the Court presumes to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009).

After receiving the Verification Texts, Plaintiff called the number listed as the sender of the messages, and "encountered a prerecorded announcement that was difficult to understand. The recording acknowledged the caller's interest in the Defendant['s] products." *Id.* ¶ 25.

Before receiving the Verification Texts, Plaintiff had no prior knowledge of Wonder or its website, had not inquired about its products or services, and had not requested any communication from Wonder. *Id.* ¶¶ 17-20. Plaintiff has suffered various harms from receiving the Verification Texts, including nuisance, invasion of privacy, and consumption of plan minutes. *Id.* ¶ 88.

## B.    Procedural History

Plaintiff initially brought the following claims:

- Count I:  Violations of TCPA §§ 227(c)(3)(F) and (c)(5)(B) for unlawful texts to a cell phone, Compl. ¶¶ 110-16;

- Count II:  Violations of TCPA § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii) for the unlawful use of an automated telephone dialing system ("ATDS") to send text messages, *id.* ¶¶ 117-22;

- Count III:  Violations of TCPA § 227(b)(1)(B) for the unlawful use of an ATDS to a cell phone without the recipient's consent, *id.* ¶¶ 123-27;

- Count IV:  Violations of N.J. Stat. Ann. § 2A:65D-3 and the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8 *et seq.*, for initiating unlawful texts to a cell phone, *id.* ¶¶ 128-37;

- Count V:  Violations of TCPA § 227(b)(2)(D) for failure to provide opt-out mechanisms, *id.* ¶¶ 138-45; and

- Count VI:  Punitive damages, *id.* ¶¶ 146-52.

And although Plaintiff did not formally bring a claim for fraudulent inducement, he alleged that Defendant fraudulently induced him by sending the Verification Texts. *Id.* ¶¶ 45-53. Given Plaintiff's *pro se* status, the Court construed his complaint liberally and identified the cause of action, even though he did not properly assert it. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

3

In the MTD Opinion, the Court determined that Plaintiff failed to state a claim on Counts I, IV, V, and VI, and accordingly dismissed those counts from the Complaint. *See generally* MTD Op. & MTD Order. While the Court dismissed Count VI *with prejudice*, the Court allowed Plaintiff leave to amend Counts I, IV, and V. *Id.* The Court also held that Plaintiff adequately stated a claim on Counts II and III and allowed those claims to proceed. *Id.*

Plaintiff has re-pled the former Counts I and V (now Counts I and IV, respectively) in his Amended Complaint as follows:

- Count I: Violations of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2) for initiating unlawful texts to a number on the National Do-Not-Call Registry, Am. Compl. ¶¶ 56-68; and

- Count IV: Violations of 47 U.S.C. § 227(b)(2)(D) for failure to provide opt-out mechanisms for texts, *id.* ¶¶ 82-89.

It appears that Plaintiff has abandoned his claims brought under New Jersey law, including the NJCFA and for fraudulent inducement. *See* D.E. 37 ("Amended Complaint Redline").

Defendant moves to dismiss Counts I and IV of the Amended Complaint. Mot. The Motion is fully briefed, *see* Opp'n and Reply, and is ready for a decision.

## II.    LEGAL STANDARD

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation modified). The defendant bears the burden of showing that a plaintiff has failed to state a claim. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In other words, when determining whether to dismiss a complaint, the Court does not need to accept as true allegations in a complaint that are directly contradicted by authenticated documents that the complaint relies on. *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1197 (3d Cir. 1993)).

## III.    ANALYSIS

To determine whether Plaintiff has stated a claim on Counts I and IV, the Court proceeds as follows. First, the Court will outline the statutory provisions in Counts I and IV. Then, the Court will summarize its relevant holdings in the MTD Opinion. Afterward, the Court will consider whether Plaintiff has cured the deficiencies outlined in the MTD Opinion and stated a claim on Counts I and IV of the Amended Complaint.

### A.    Relevant Statutory Framework

Congress created the TCPA in response to the growing number of telemarketing calls and faxes that tied up emergency cell phone lines. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 15391, 15391-92 (2012). The TCPA applies to both voice calls and text messages. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (citation omitted). The TCPA makes it illegal to, among other things, initiate a telephone call or text message to any phone number using an artificial or prerecorded voice to deliver a

message without prior express consent (barring very limited exceptions not relevant here). 47 U.S.C. § 227(b)(1)(B). Congress provided the public with the right to sue if they received more than one telephone call or text within any 12-month period by or on behalf of the same entity in violation of the TCPA. 47 U.S.C. § 227(c)(5).

Count I of the Amended Complaint concerns alleged violations of TCPA § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2). These statutes are interrelated. *Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915, 2023 WL 3294845, at *2 (E.D. Pa. May 5, 2023). Section 227(c)(3)(F) provides that:

> if the [Federal Communications Commission] decides to establish a [Do Not Call] database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F). In turn, the resulting regulation states, "No person or entity shall initiate any **telephone solicitation** to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

*Marks*, 2023 WL 3294845, at *2 (emphasis added). According to Plaintiff, the Verification Texts are "telephone solicitations . . . because they encouraged Plaintiff to purchase or use Defendant's goods or services." *Id.* ¶ 60.

Count IV of the Amended Complaint concerns alleged violations of TCPA § 227(b)(2)(D). It is a violation of the TCPA to send an unsolicited advertisement "unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)." 47 U.S.C. § 227(b)(1)(C)(iii). "Section 227(b)(2)(D) in turn sets forth the requirements for an acceptable opt-out notice. That section dictates the placement of the notice, sets forth several statements the notice must include, and requires that the notice also comply with the requirements of subparagraph 227(b)(2)(E) and subsection 227(d)." *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 285 (S.D.N.Y. 2013) (citing 47 U.S.C. § 227(b)(2)(D)).

Plaintiff alleges that Defendant violated § 227(b)(2)(D) by not including an opt-out provision in the Verification Texts. Am. Compl. ¶¶ 85-87. Specifically, the Verification Texts "did not include any opt-out mechanism, such as the ability to reply with 'STOP,' which is a reasonable means of revocation as recognized by the FCC." *Id.* ¶ 86.

**B.      Summary of the MTD Opinion**

A question integral to Plaintiff's claims brought under TCPA §§ 227(c)(3)(F) and 227(b)(2)(D) is whether the Verification Texts are unsolicited advertisements.[3] In the MTD Opinion, the Court held that Plaintiff failed to establish that the Verification Texts were advertisements. MTD Op. at 8-11. In reaching that conclusion, the Court first explained that:

> The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). The TCPA defines an "unsolicited advertisement" as any "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission." 47 U.S.C. § 227(a)(5).

*Id.* at 8. Applying guidance from the Third Circuit, the Court then determined that the Verification Texts were not advertisements because "nothing in the Verification Texts promotes goods or services to be bought or sold, nor does anything in the Verification Texts directly or indirectly inform Plaintiff that [Defendant] sold anything of value." *Id.* at 9 (citing *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 248-49 (3d Cir. 2019)).

The Court also rejected Plaintiff's theory that the Verification Texts were a "trojan horse" designed to make him visit Defendant's website. *Id.* at 10. The Court noted that *Mauthe*

---

[3] In his Opposition, Plaintiff correctly notes that not *all* provisions of the TCPA require the alleged unlawful communication to be an unsolicited advertisement. Opp'n at 5. That is why Counts II and III of the Complaint were allowed to proceed. *See* MTD Op. However, to state a claim under §§ 227(c)(3)(F) and 227(b)(2)(D), Plaintiff must sufficiently allege that the Verification Texts are advertisements.

disapproved of the reasoning behind the trojan horse or "pretext" theory because accepting "it would mean that '*any* [message] sent by defendant, for *any* purpose' could be considered an advertisement or solicitation as long as it contained information about the defendant's website." *Id.* (quoting *Mauthe*, 767 F. App'x at 250). And, unlike in *Mauthe*, the communications at issue in this case did not even include information about Wonder's website. *Id.* Because Plaintiff's claims brought under TCPA §§ 227(c)(3)(F) and 227(b)(2)(D) could not survive without a finding that the Verification Texts were unsolicited advertisements as defined under the TCPA, the Court dismissed both counts. *Id.* at 10-11.

   **C.**  **Plaintiff Fails to Show the Verification Texts Are Advertisements**

Plaintiff has again failed to sufficiently plead facts that support the inference that the Verification Texts are advertisements. As shown in the Amended Complaint, Plaintiff received the two following messages:



Am. Compl. ¶ 22.

At the outset, the Court notes that Plaintiff has not alleged any facts that show the Verification Texts meet the TCPA's definition of an advertisement. The Court described at length in the MTD Opinion what it would take for Plaintiff to do that. *See* MTD Op. at 9-10. For example, the Court highlighted that "[a]dvertising is the action of drawing the public's attention to something to promote its sale," and that at a minimum, Plaintiff must show the Verification Texts "directly or indirectly inform[ed] [him] the sender or some other entity sells something of value." *Mauthe*, 767 F. App'x at 248-49. The Court then outlined how Plaintiff fell short of meeting this standard, including because the Verification Texts did not promote goods or services to be bought or sold (or suggest that Defendant sold anything of value), and because Plaintiff could not rely on the theory that the unsolicited messages were deliberately designed to invite him to research Defendant's products. MTD Op. at 9-10.

Despite this explicit guidance, Plaintiff has brought these claims again without providing any substantively new allegations or legal theories that would allow the Court "under any reasonable reading of the complaint" to conclude that he may be entitled to relief. *Cnty. of Allegheny*, 515 F.3d at 233. Put simply, no allegations come close to showing how the Verification Texts are advertisements under the TCPA. Indeed, after reviewing the Amended Complaint Redline, it appears Plaintiff includes only two new allegations relevant to this issue: (1) that "each message contained a 'Wonder Verification Code' and directed Plaintiff to engage with Defendant's website and services[,]" Am. Compl. ¶ 59 (emphasis added); and (2) the Verification Texts "were 'telephone solicitations' within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) because they encouraged Plaintiff to purchase or use Defendant's goods or services[,]" *id.* ¶ 60.

9

Clearly, the Verification Texts do not explicitly direct Plaintiff to engage with Defendant's website and services. There is no mention of Wonder's website or that Wonder sells anything of value. Nor do the Verification Texts promote any goods or services to be sold or "encourage" Plaintiff to use Defendant's goods or services.[4] Put differently, paragraphs 59 and 60 of the Amended Complaint lack factual support.

Plaintiff's arguments in his Opposition fare no better. Despite the Court holding in the MTD Opinion that Plaintiff cannot rely on a "trojan horse" theory that the Verification Texts were designed to invite him to visit Defendant's website, that is exactly what Plaintiff does again. In addition to the above allegations in the Amended Complaint, Plaintiff doubles down in his Opposition on this position:

> These were not neutral or random codes; they were unexplained prompt messages from an entity Plaintiff never heard of. **This subterfuge was a ploy deliberately used by Defendant as unexplained prompts that gave the recipient no context and forced him to search for meaning. In doing so, the recipient is exposed [sic] the Defendant's business operations and offerings (The Website) in a marketing effort, to encourage Plaintiff to invest in the defendants property, goods or services.**

Opp'n at 5 (emphasis added). The Court made clear to Plaintiff that the Third Circuit would "not adopt a standard under the TCPA which effectively would construe the inclusion of a website address in a fax as *de facto* advertising." MTD Op. at 10 (quoting *Mauthe*, 767 F. App'x at 250). Plaintiff has failed to allege *any* facts that would allow the Court to draw the inference that the

---

[4] In the MTD Opinion, the Court explicitly rejected the idea that a "recipient's outside knowledge that a sender sells something does not transform every [message] sent by such sender to a recipient with such knowledge into an advertisement." MTD Op. at 10 (citing *Mauthe*, 767 F. App'x at 249). For this reason, Plaintiff again cannot rely on his outside knowledge that Defendant is in the food services industry, and therefore, sent the Verification Texts to induce him to visit its website. Am. Compl. ¶¶ 44-45. As evident from the Verification Texts, there is no mention of Wonder's industry. Even Plaintiff concedes this when he states that the Verification Texts contained "no description or explanation." Opp'n at 5.

10

Verification Texts were a marketing ploy or advertisements. The Verification Texts did not even include a link to any website, making this an even clearer call than the fax that the Third Circuit considered in *Mauthe* and determined was not an advertisement. Without such facts, Plaintiff's claims cannot stand. The Court, finding that amendment would be futile, will **DISMISS** Counts I and IV of the Amended Complaint ***with prejudice***.[5]

### D.    Request for Sanctions

Finally, Defendant makes another request for sanctions against Plaintiff—this time for his "knowingly filing a frivolous Amended Complaint." Mot. at 10-11. After reviewing the Amended Complaint, the Court has come to the conclusion that sanctions are likely warranted.[6]

> Rule 11 imposes . . . an affirmative duty to conduct an "inquiry reasonable under the circumstances" to ensure that their (1) "[filings are] not being presented for any improper purpose," (2) "legal contentions are warranted by existing law or by a nonfrivolous argument," (3) "factual contentions have evidentiary support," and (4) "denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b). In other words, at the time of filing the challenged paper, [the party] must have an "objective knowledge or belief" that the challenged paper's basis is "well-grounded in law and fact." *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) (internal quotations omitted) (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)). Thus, a court may impose sanctions in "exceptional circumstances" where a litigant has advanced a claim or motion that is patently unmeritorious, frivolous, or filed for an improper

---

[5] "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation modified). Even when viewing the facts in the light most favorable to Plaintiff, the Court cannot escape the conclusion that Plaintiff cannot state a claim that is premised on the Verification Texts being advertisements under the TCPA. *See Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (noting that amendment is futile only if the proposed amendment would fail to state a claim or is clearly frivolous).

[6] In Opposition, Plaintiff hangs his hat on the fact that the Court granted him leave to amend these counts of the Complaint, and therefore, the Amended Complaint cannot be frivolous. *See, e.g.*, Opp'n at 2. Plaintiff is wrong that he is absolved of responsibility on this basis. Just because the Court *allowed* Plaintiff leave to amend did not *require* him to do so. Plaintiff, before making any filing in any case, must comply with his duties under Federal Rule of Civil Procedure 11(b) to, among other things, have an informed belief that his claims are supported by existing law and that his factual contention has evidentiary support.

11

purpose.  *Id.* at 1314 (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

*Barker v. United Airlines, Inc.*, No. 25-1539, 2026 WL 949093, at *1 (3d Cir. Apr. 8, 2026).

As Plaintiff acknowledges, "Rule 11 applies to all parties," and "sanctions must rest on specific factual violations."  Opp'n at 8; *see Zelma v. Penn LLC*, No. 19-8725, 2020 WL 278763, at *3 (D.N.J. Jan. 17, 2020) ("*Pro se* litigants are not shielded from the sanctions offered by Rule 11." (quoting *Skoorka v. Kean Univ.*, No. 16-3842, 2017 WL 6539449, at *3 (D.N.J. Dec. 21, 2017))).

As indicated above, Plaintiff has included two new baseless allegations in his Amended Complaint:  (1) that "each message contained a 'Wonder Verification Code' and **directed Plaintiff to engage with Defendant's website and services**[,]" Am. Compl. ¶ 59 (emphasis added); and (2) the Verification Texts "were 'telephone solicitations' within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) because they **encouraged Plaintiff to purchase or use Defendant's goods or services**[,]" *id.* ¶ 60 (emphasis added).  In addition, Plaintiff has repackaged a legal argument the Court explicitly rejected (the "trojan horse" theory), and provides no legal authority to support his position.  *See* Opp'n.  As explained *supra*, these allegations are plainly incorrect and belied by the language of the Verification Texts.  Moreover, Plaintiff's contention that the Verification Texts were "a ploy deliberately used by Defendant as unexplained prompts that gave the recipient no context and forced him to search for meaning," Opp'n at 5, was already rejected by the Court.

This is not Defendant's first request for sanctions in this action.  The Court, when issuing the MTD Opinion, declined to issue sanctions against Plaintiff despite his wholly unsatisfactory explanation for the litany of inaccurate citations in his brief and the fact that the core of Defendant's main argument for sanctions—that Plaintiff manufactured this suit—could not be

12

decided at that juncture.  MTD Op. at 18-19.  The Court recognized that "all doubts [are resolved] in favor of the non-moving party on a motion for sanctions."  *Id.* at 19 (quoting *Penn LLC*, No. 19-8725, 2020 WL 278763, at \*9).

The Court is mindful that this is one of many cases litigated between Plaintiff and Defense Counsel.  The Court is also aware that Defense Counsel has moved for sanctions against Plaintiff on numerous occasions, and as such, should know the requirements for moving for sanctions.  As explained in *Penn*, when a Rule 11 motion for sanctions is made by a party (as opposed to the Court), that motion:

> must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

2020 WL 278763, at \*3 (quoting Fed. R. Civ. P. 11(c)(2)).  "Pursuant to Rule 11(c)(2), a party cannot file a motion for sanctions until it first presents the motion to the offending party and allows 21 days for the other party to withdraw or correct the challenged issue."  *Li v. Zhang*, No. 22-891, 2023 WL 8603026, at \*6 (D.N.J. Dec. 12, 2023).  Nevertheless, Defense Counsel has failed to comply with Rule 11(c)(2) by not moving separately for sanctions, not serving any motion on Plaintiff, and not providing Plaintiff the required 21-day safe harbor to withdraw his Amended Complaint.  As such, Defendant's request for sanctions is **DENIED**.

However, the Court has the "inherent power to sanction an offending . . . party for bad faith conduct."  *Farris v. Cnty. of Camden*, 61 F. Supp. 2d 307, 334 (D.N.J. 1999).  A district court must provide "notice and a reasonable opportunity to respond" before imposing sanctions on a party.  *OR v. Hutner*, 515 F. App'x 85, 88-89 (3d Cir. 2013) (quoting Fed. R. Civ. P. 11(c)(1)).  In addition:

> [T]he party sought to be sanctioned is entitled to particularized notice including, at a minimum, (1) the fact that Rule 11 sanctions are under consideration, (2) the reasons why sanctions are under consideration, and (3) the form of sanctions under consideration." *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994).  The notice must apprise the party of the "particular factors that he must address if he is to avoid sanctions." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 100 (3d Cir. 1999).

*Id.* at 89.  The Court will **ORDER** Plaintiff to **SHOW CAUSE** why he should not be sanctioned for his conduct—namely, filing the Amended Complaint with patently inaccurate allegations and advancing legal theories explicitly rejected by the Court in this action without any legal authority to support his position.

## IV.     CONCLUSION

For the reasons explained above, the Court will **GRANT** Defendant's Motion and **DISMISS** *with prejudice* Counts I and IV of the Amended Complaint and **ORDER** Plaintiff to **SHOW CAUSE**.  An appropriate Order accompanies this Opinion.


Dated: **May 20, 2026**


_____
Evelyn Padin, U.S.D.J.